## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 19-25230-Civ-WILLIAMS/TORRES

ROSA ACOSTA; BRENDA LYNN GEIGER;
MARIANA DAVALOS; AMANDA CERNY;
and IESHA MARIE CRESPO,

        Plaintiffs,

v.

O-LIVE ENTERTAINMENT,
INC.; HEADS OR TAILS VIXENS, LLC,

        Defendants.
_____/

## REPORT AND RECOMMENDATION ON PLAINTIFFS' AMMENDED MOTION FOR DEFAULT JUDGMENT

This matter is before the Court on Rosa Acosta, Brenda Lynn Geiger, Mariana Davalos, Amanda Cerny, and Iesha Marie Crespo's ("Plaintiffs") amended motion for default judgment against O-Live Entertainment, Inc., and Heads or Tails Vixens, LLC, ("Defendants") [D.E. 15]. No response was filed in opposition to Plaintiffs' motion and the time to do so has now passed. Therefore, Plaintiffs' motion is now ripe for disposition. Upon review of the motion, which is unopposed and may be granted by default under S.D. Fla. Local R. 7.1, Plaintiff's motion for default judgment should be **GRANTED in part** and **DENIED in part.**

## *I. BACKGROUND*

On December 20, 2019, Plaintiffs filed this action against Defendants alleging that they committed willful trademark infringement in violation of 15 U.S.C.§ 1114. (D.E. 1). Plaintiffs are all professional models who claim that Defendants have pirated the image, likeness, and identity of each Plaintiff without Plaintiffs' authorization and without offering compensation for the photos. Defendants, O-Live Entertainment Inc., doing business as Heads or Tails Gentleman's Club, operate a strip club that owns and runs an Instagram page it uses to promote upcoming events and parties. Plaintiffs contend that Defendants used their images to advertise upcoming events on its Instagram page and created the false appearance that Plaintiffs worked for Defendants or were scheduled to perform at the events.

On March 11, 2020, after Defendants failed to appear or otherwise answer the complaint, Plaintiffs moved for the clerk of the court to enter default against Defendants, and the clerk entered such default the next day.  [D.E. 8]. The Court then directed Plaintiffs to file a motion for entry of final default judgment against Defendants on April 2, 2020.  [D.E. 7].  On April 28, 2020, after Defendants failed to appear or otherwise answer the complaint, Plaintiffs moved for the clerk of the court to enter default against Defendants, and the clerk entered such default the same day. [D.E. 12-13].  Plaintiffs then filed this motion for final default judgment against the Defendants and now seek damages for the use of their image and likeness without consent.  [D.E. 15].

## II. APPLICABLE PRINCIPLES AND LAW

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for obtaining default judgment.  First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court is authorized to enter a clerk's default.  *See* Fed. R. Civ. P. 55(a).  Second, after entry of the clerk's default, the court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent person.  Fed. R. Civ. P. 55(b)(2).  "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment and is barred from contesting on appeal the facts thus established."  *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (internal quotation and citation omitted).

A court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment pursuant to Rule 55(b).  *See United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206) (5th Cir. 1975)).  "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If the admitted facts are sufficient to establish liability, a court must then ascertain the appropriate amount of damages and enter final judgment in that amount.  *See*

*Nishimatsu*, 515 F.2d at 1206; *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1216 (S.D. Fla. 2004).

Damages may be awarded only if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). An evidentiary hearing on the appropriate amount of damages is not required by Rule 55, and it is within the Court's discretion to choose whether such a hearing should takes place. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011). With this guidance in mind, we turn to the allegations found within Plaintiff's complaint to determine whether final default judgment is appropriate.

### *III. ANALYSIS*

Upon review of the record, there is a sufficient basis in the pleading for the default judgment to be entered in favor of the Plaintiffs on counts I, II, III, and IV.

### A.   *Counts I and II*

Count I and Count II for each Plaintiff seeks relief under Section 43 of the Lanham Act, 15 U.S.C. § 1125 which prohibits advertisements or promotions from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . ." 15 U.S.C. §1125(a)(1)(B). "To establish a prima facie case under § 1125(a) Plaintiff[s] must show

(1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it "such that consumers were likely to confuse the two." *Lone Star Steakhouse and Saloon, Inc v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997). There are seven factors used to determine whether the second element has been met: (1) the type of mark; (2) the similarity of the marks; (3) the similarity of the goods; (4) the similarity of the parties' retail outlets, trade channels, and customers; (5) the similarity of advertising media; (6) the defendant's intent; and (7) actual confusion. *Frehling Enters., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1335-41 (11th Cir.1999).

Here, Plaintiffs have met these elements and pleaded proper claims under the first and second counts. To prove a plaintiff has an enforceable trademark, "the plaintiff need not have a registered mark." *Congara Inc. v. Singleton*, 743 F.2d 1508, 1512-13 (11th Cir. 1984) (holding that the use of another's "common law trademark" can constitute a violation where the trademarks are "so associated with [the plaintiff's] goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source"). Plaintiffs allege here that Defendants used photos belonging to Plaintiffs, without authorization, which are highly associated with other goods and services, because Plaintiffs are professional models.

The second element of the claim is satisfied because Plaintiffs allege that through the use of the photos, Defendants implied that Plaintiffs would be at the events. Plaintiffs claim the type of mark is a picture of the plaintiffs which highly

associates Plaintiffs to the events. Plaintiffs claim the similarity of the marks is high because Defendants used photos which Plaintiffs took for other paying companies. Plaintiffs claim the similarity of the goods is also relatively high because of the types of modeling photos that Defendants used. Plaintiffs then specifically allege the similarity of the parties' retail outlets, trade channels, and customers is high because they are professional models who have a large following and Defendants used the exact photos other companies paid the models to take.  Plaintiffs then claim Defendants knew or should have known the photos belonged to the Plaintiffs. And this caused actual confusion as to whether Plaintiffs were representatives of Defendants' business.

Because Plaintiffs have alleged that Defendants used their trademark in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125 and each element contains sufficient facts as presented in Plaintiffs' complaint, Plaintiffs' motion for default judgment as to count one and two should be **GRANTED.**

## B.    *Count III*

Count III for each of the plaintiffs seeks relief under Fla. Stat. § 540.08 which states that "[n]o person shall publish, print, display, or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent." Fla. Stat. § 540.08. The complaint satisfies this claim under § 540.08 because each Plaintiff claims they did not authorize Defendants to use their photos but Defendants did so anyway.  Given Plaintiffs' unrebutted allegations that

Defendant use their photos for advertisement without authorization, Plaintiffs' motion for default judgment as to count three should be **GRANTED.**

### C.   <u>Count IV</u>

Count IV for each of the plaintiffs seeks relief under the common law right of publicity. The common law right of publicity protects broadly against using the image and likeness of a person without consent, for advertising purposes. Plaintiffs' allegations are sufficient to state a claim under common law because they each claim they did not authorize Defendants to use their photos. Florida recognizes a statutory as well as common law claim for this type of tort. *See Weaver v. Myers*, 229 So. 3d 1118 (Fla. 2017). Given Plaintiffs' unrebutted allegations that Defendant use their photos for advertisement without authorization, Plaintiffs' motion for default judgment as to count four should be **GRANTED.**

### D.   <u>Count V</u>

Count V for each of the plaintiffs seeks relief under the conversion doctrine. The conversion doctrine provides relief when one "deprives another of his property permanently or for an indefinite time." *National Fire Ins. Co. of Pennsylvania v. Carib Aviation, Inc.* 759 F.2d 873, 878 (11th Cir. 1985). However, conversion is a cause of action only for tangible property and does not extend to property that is intangible, unless the plaintiff no longer has access to the property that was allegedly taken from him. *See Star Fruit Co. v. Eagle Lake Growers,* 160 Fla. 130, 132 (1948) ("The gist of a conversion has been declared to be not the acquisition of the property of the wrongdoer, but the wrongful deprivation of a person of property to the possession of

which he is entitled."); *accord Superior Edge, Inc. v. Monsanto Co.,* 964 F. Supp. 2d 1017 (D. Minn. 2013); *Fiorenti v. Central Emergency Physicians, PLLC.,* 305 A.D.2d 453, 762 N.Y.S.2d 402 (N.Y. 2d Dep't 2003).  For that reason Defendants' use of the photos does not definitively establish a conversion claim because there is insufficient evidence that Defendants physically deprived Plaintiffs from using the photos after Defendants posted them. *See, e.g., Mathieson v. American Media, Inc.,* No.05-80823-CIV, 2006 WL 8433638 at *2-3 (S.D. Fla. May 8, 2006) (conversion claim over misuse of photographs without consent did not state a claim).

Here Plaintiffs' allegations are clearly insufficient for a conversion claim because they fail to show Defendants deprived them of their tangible property indefinitely. At best, Plaintiffs are alleging wrongful use of their photographs, which may be unlawful on other grounds but not on a conversion theory.  Plaintiffs' motion for default judgment as to count five should be **DENIED.**

### E.    *Count VI*

Count VI claims relief under Florida unjust enrichment principles.  This is a quasi-contractual claim where a plaintiff must show that: "(1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof." *Tootrend, Inc. v. CMT Utensili*, SRL 198 F.3d 802, 805 (11th Cir. 1999) (citing *Greenfield v. Manor Care, Inc.,* 705 So. 2d 926, 930–31 (Fla. Dist. Ct. App. 1997).    Plaintiff claims that the photos used by

Defendants brought increased business to Defendants, Defendants knew or should have known Plaintiffs' photos would have this effect, and it would be inequitable for Defendants to use these photos without compensating Plaintiffs. But Plaintiff has not alleged facts showing how, in a contractual setting, Plaintiff conferred a benefit on the defendant, directly or indirectly.  The complaint has adequately alleged various species of tort claims but the contractual allegations are not sufficient to give rise to an unjust enrichment theory in addition to the torts alleged. Plaintiffs' motion for default judgment as to count six should thus be **DENIED**.

In sum, at least as to Counts I through IV, Plaintiffs have adequately and specifically pleaded facts that are more than mere labels and conclusions. *See Twombly,* 550 U.S. 544, 555 (2007). Accordingly, Plaintiffs' motion for final default judgment should be granted in part because they set forth lawful causes of action in the complaint, to which Defendants did not respond to in a timely manner.

### F.   *Damages and Costs*

Having found that Defendants should be liable for Counts I through IV, we now turn to the relief available. Plaintiffs should receive a total of $215,000.00 in damages for Defendants' use of their photos to advertise its business in addition to $586.30 in in taxable costs and expenses. The damages calculations were estimated by an expert, Stephen Chamberlain, who has been in the modeling business for over thirty years. [D.E. 15-1].

"[S]tatutory damages [are] especially appropriate in default judgment cases due to infringer nondisclosure." *PetMed Express*, 336 F. Supp. 2d at 1220 (citing *Sara*

*Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999)). "The Court has wide discretion to determine the amount of statutory damages." *Chanel*, 240 F. Supp. 3d at 1292 (citing *PetMed Express*, 336 F. Supp. 2d at 1219). 15 U.S.C. § 1117(c)(1) provides that in cases involving the use of a counterfeit mark in connection with a sale, offering, or distribution of goods, "the plaintiff may elect . . . an award of statutory damages for any such use . . . in the amount of . . . not less than $1,000 or more than $200,000 per counterfeit mark[.]". 15 U.S.C. § 1117(c)(1). These "damages may be awarded even when they are not susceptible to precise calculations[.]" *Ramada Inns, Inc. v. Gadsden Motel Co.,* 804 F.2d 1562, 1565 (11th Cir.1986). Additionally, 15 U.S.C. § 1117(a) provides Plaintiffs can also recover legal costs.

### i. Rosa Acosta

Plaintiff Rosa Acosta seeks $30,000 in damages for a photo Defendants used of her to promote its business. Acosta requests $15,000 for Advertising and $15,000 for Social Media use. The photo has the name "Head or Tails" pasted over Acosta's image to promote an event and sales of a third-party liquor brand. The numerical values are based on her prior work as a "dancer, performer, celebrity, designer, social media influencer, and Businesswoman." [D.E. 15-1 at 33]. Acosta was paid $30,000 by Comedy After Dark for two appearances and social media posts. [D.E. 15-1 at 33] Acosta was paid $20,000 a month by Adwizar for social media posts. [D.E. 15-1 at 33]. Her Patreon subscriptions average to $5,000 a month. [D.E. 15-1 at 33]. In 9 months on the app Only Fans, she has made $90,000. [D.E. 15-1 at 33]. She also has over five million social media followers. [D.E. 15-1 at 22]. Furthermore, Acosta is the face of

her e-commerce site, CossaMia, which had net sales of $204,000 in 2016. [D.E. 15-1 at 33].

Acosta does not have an established "day rate," nor does she accept "payment by assignment," in normal circumstances. However, based on her previous work, her sizeable social media following, and the nature of her business, $15,000 is a reasonable estimate of how much it would cost for a company to have the license to use her photos for advertisement. Additionally, because she has over five million followers on social media and has successful Patreon and Only Fans accounts, $15,000 is a reasonable amount for Defendants to pay in damages for Social Media. Therefore, the request for $30,000 in damages should be **GRANTED.**

### ii.   *Brenda Lynn Geiger*

Plaintiff Brenda Lynn Geiger seeks $30,000 in damages for a photo Defendants posted of her on its social media account with hashtags and logos that made it appear like she was doing business with Defendants. [D.E. 15-1 at 39] Geiger seeks $10,000 for Advertisement, $10,000 for Social Media, and $10,000 for Branding. [D.E. 15-1 at 4]. Geiger has appeared in music videos for artists Lil' Wayne and Keri Hilton. She has appeared on *The Howard Stern Show*, magazines such as "Show," "Maxim," "Raw," and a clothing campaign for Primitive. [D.E. 15-1 at 35]. She was also the face of *Full Tilt Poker*. [D.E. 15-1]. She is now a married mother of twins. [D.E. 15-1 at 35].

The expert established Geiger's day rate for an advertisement photo like the one used is $10,000. Therefore, this is a reasonable amount for Defendants to pay in

damages to cover Advertisement. [D.E. 15-1 at 36]. The worth of Geiger's social media posts is unknown. However, the expert materials mention that usage fees may not be less than a model's day rate. [D.E. 15-1 at 104]. Therefore, $10,000 is reasonable for Defendants to pay in damages for its use of the image to promote its business. Additionally, Defendants hashtagged words on the post, such as,"Strip Club," "Strippers," and "Dancer," which made it seem that Geiger was in partnership with Defendants. [D.E. 15-1 at 39]. These hashtags gave Defendants the unfair advantage of making it appear like a reputable and well-known model was a consenting partner. Because the post made it seem as if she was going to perform and her day rate is $10,000, this is a reasonable amount in damages to cover Branding. Therefore, the request for $30,000 in damages should be **GRANTED.**

### iii.    *Mariana Davalos*

Plaintiff Mariana Davalos seeks $45,000 in damages. [D.E. 15-1 at 5]. $15,000 for Advertisement, $15,000 for Social Media, and $15,000 for Branding. [D.E. 15-1 at 5]. The expert established a day rate of $15,000 for this type of work even though Davalos has never done an advertisement for a gentlemen's club before. [D.E. 15-1 at 53]. Davalos began modeling as a teen with her twin sister in Colombia. She became the face of Nacar Cosmetics and has appeared in the "Maxim" magazine, "Imagen" magazine, "Besame," "SOHO TV," "Rumbas de la Ciudad," "La Granja Tolima," "KissCatalogue," "Deluxe Jeans," "Revista Soho," "SCRIBE," "Coed People," "La Gemela mas Dulce," "Para Hombre," "Spiritual Jeans," and "Satori." [D.E. 15-1 at 44]. She has almost two hundred thousand followers on Instagram and a quarter-million

likes on Facebook. [D.E. 15-1 at 44]. Her average day rate for larger campaigns is around $25,000. [D.E. 15-1 at 48].

$15,000 in damages for Advertisement is reasonable because Davalos' day rate is much higher, considering she is selective in the types of clients she does business with. [D.E. 15-1 at 48]. Davalos does not seem to have as large of a social media following as other models of her caliber. However, as mentioned in the expert materials, usage fees may not be less than a day rate. [D.E. 15-1 at 104]. Therefore, $15,000 is reasonable in damages for Defendants' use of the image to promote its business. Additionally, Defendants hashtagged words on the post, such as," Strip Club," "Strippers," and "Dancer," which made it seem that Davalos was in partnership with Defendants. [D.E. 15-1 at 50]. Because the post made it seem as if she was going to perform, and her day rate is $15,000, this is a reasonable amount of damages to cover Branding. Therefore, the request for $45,000 in damages should be **GRANTED**.

### iv.   *Amanda Cerny*

Plaintiff Amanda Cerny seeks $100,000. [D.E. 15-1 at 5]. $33,333.33 for Advertising, $33,333.33 for Social Media, and $33,333.33 for Branding. [D.E. 15-1 at 5]. Cerny is a well-known American actress, model, and social-media influencer. [D.E. 15-1 at 54]. She has more than 35 million followers across YouTube, Facebook, Instagram, and Twitter, with 24.4 million followers on Instagram alone. [D.E. 15-1 at 54]. She has partnered with brands like Nike, Beats by Dre, Marc Jacobs, Universal, and Guess. [D.E. 15-1 at 54]. Her contract with Guess was for $200,000.

[D.E. 15-1 at 54]. Her contracts with BigO technologies for two videos each were $140,000 for the first time and $230,000 for the second time. [D.E. 15-1 at 54]. Her contract with Popchest for four videos was $400,000. [D.E. 15-1 at 54].

The expert established that Cerny has a day rate of $100,000 based on her previous campaigns. [D.E. 15-1 at 67]. $33,333.33 is a reasonable amount in damages to cover Advertisement. Cerny's price for advertisements is usually much higher, as is stated above. Additionally, $33,333.33 in damages for Social Media is also reasonable, because, as is stated above, she usually charges companies a higher rate to promote products on her social media, which has one of the largest followings. Lastly, $33,333.33 is reasonable for damages for Branding because the hashtags "Stripping" and "Dancer" attached to the photo made it appear as if she was doing business with Defendants, for which she would usually charge her day rate, which as estimated by the expert, is a much higher amount. [D.E. 15-1 at 65].  Therefore, the request for $100,000 in damages should be **GRANTED.**

### v.   *Iesha Marie Crespo*

Lastly, Plaintiff Iesha Marie Crespo requests $10,000 in damages. [D.E. 15-1 at 5]. $5,000 for Advertisement and $5,000 for Social Media. [D.E. 15-1 at 5]. Defendants used a photo of Crespo to advertise its business as well as third party owned liquor brands. [D.E. 15-1 at 75]. Crespo has appeared in several music videos for artists French Montana and Rick Ross as well as the magazines "Uncut," "Raw," "Models Latina," and "Shock." [D.E. 15-1 at 69]. She has a social media following of

750,000 followers combined throughout different platforms. [D.E. 15-1 at 69]. She has earned up to $30,000 for a series of Instagram posts. [D.E. 15-1 at 69].

The expert established that Crespo has a day rate of $5,000. [D.E. 15-1 at 78]. Damages for Advertisement amounting to $5,000 seems reasonable because Crespo has charged a similar rate and higher for other campaigns. Similarly, $5,000 in damages to cover Social Media is also reasonable because she has a large following of 750,000 across social media apps and has charged $30,000 for a series of Instagram posts.  Therefore, the request for $10,000 in damages should be **GRANTED.**

### vi.    *Legal Costs*

Under 15 U.S.C. § 1117(a) Plaintiffs are entitled to the costs of the action. Fed. R. Civ. P. 54(d). Section 1920 limits what may be taxed as costs to include: (1) fees of the Clerk and United States Marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) witness and printing fees; (4) copying costs for materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation for court-appointed experts, interpreters, and the salaries, fees, expenses and costs of special interpretation services under 28 U.S.C. § 1828. 28 U.S.C. § 1920. [D.E. 15-4 at 15]. Because plaintiffs are requesting $586.30 in fees relating to expert costs, filing fees, service of process, and other administrative expenses, this is reasonable and should be **GRANTED.**

### vii.    Summary

In sum, Plaintiffs' collective request for $215,000 in damages for the use of their image and likeness by Defendants in addition to $586.30 in costs relating to expert costs, filing fees, service of process, and other administrative expenses under 15 U.S.C. § 1117, should be **GRANTED.**

### G.  Florida Rules of Civil Procedure Form 1.977(b)

Under Florida Rules of Civil Procedure Rule 1.560(a) the judgment creditor may obtain discovery in the manner provided by the rules, after a judgment or decree. Fla. R. Civ. P 1.560(a). Plaintiffs' request for Defendants to complete Florida Rules of Civil Procedure Form 1.977(b) Fact Information Sheet including all required attachments, within forty-five (45) days from the date this Court's judgment is entered, or such other time as determined by this Court, should be **GRANTED.**

### IV. CONCLUSION

Based on the uncontested facts, we **RECOMMEND** that Plaintiffs' motion for final default judgment [D.E. 15] should be **GRANTED in part** and **DENIED in part**:

    A. Plaintiffs' motion for final default judgment as to Counts I, II, III, and IV should be **GRANTED.**

    B. Plaintiffs' motion for final default judgment as to counts V and VI should be **DENIED.**

C.  Plaintiffs' request for $215,000.00 in damages in addition to $586.30 in relating to expert costs, filing fees, service of process, and other administrative expenses should be **GRANTED.**

D.  Plaintiffs' request for Defendants to complete Florida Rules of Civil Procedure Form 1.977(b) Fact Information Sheet including all required attachments, within forty-five (45) days from the date this Court's judgment is entered, or such other time as determined by this Court should be **GRANTED.**

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 4th day of September, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge